OLIVE A. STERNAMAN, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

*Life insurance — forfeiture of — it cannot be avoided by proof of statements by the insured to the medical examiner, made by the terms of the application the agent of the insured, not contained in the application.*

An application for a policy of life insurance, made a part of the contract, contained a warranty on the part of the insured that the answers and statements made to the medical examiner " are full and true, and are correctly recorded, and that no information or statement not contained in this application 'and in the statements made to the medical examiner received or acquired at any time by any person shall be binding upon the company, or shall modify or alter the declaration and warranties made therein; that the persons who wrote in the answers and statements were and are our agents for' the purpose, and not the agents of the company."

*Held,* that the fact that the insured informed the insurance company's medical examiner that he had previously consulted physicians for various ailments, and that the medical examiner stated that none of the ailments were of sufficient importance to warrant their being mentioned, and thereupon filled out the application without referring to them or either of them, did not preclude the insurance company from asserting a forfeiture because of the failure to mention them in the application.

SPRING, J., dissented.

APPEAL by the plaintiff, Olive A. Sternaman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 14th day of June, 1898, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the Erie Trial Term.

*Wallace Thayer*, for the appellant.

*Seward A. Simons*, for the respondent.

ADAMS, P. J.:

This action is brought to recover the amount alleged to be due upon a policy of insurance issued by the defendant upon the life of George H. Sternaman for the benefit of the plaintiff, his wife. The policy was for $1,000, and bore date the 5th day of May, 1896. It was issued in reliance upon certain statements, representations and warranties contained in an application for such policy, which application was dated April 25, 1896, and was signed by both the plaintiff and the insured. These statements and representations related mainly to the physical condition and family history of the insured; and in order to demonstrate their falsity and thereby establish the defense interposed to the plaintiff's complaint, it was proven upon the trial that the insured had consulted with one James J. McFadden, a physician and surgeon, on four separate occasions during the year 1895, twice for sore eyes and twice for malaria; that on several occasions, before signing the application, the insured had suffered from paroxysms of hysteria, during which he lost consciousness; that on three different days in June, 1895, he was attended at his home by Dr. William T. Tanner for tonsilitis, and that he had also had his hand dressed, prior to his signing the application, by Dr. Staples, for an injury received in consequence of a fall. These facts were not controverted by the plaintiff, and inasmuch as they are at variance with certain representations made in the application, and very apparently concealed from the defendant at the time the application was made, they obviously constitute a breach of warranty which necessarily avoids the policy.

It appears, however, that all these statements and representations were made to a Dr. Langley, who was the defendant's medical examiner, and upon the trial the plaintiff offered to prove that while

the insured was undergoing his medical examination, he informed the examiner fully and particularly respecting the various matters hereinbefore referred to; that Dr. Langley stated that none of them was of sufficient importance to warrant its being mentioned, and that the doctor thereupon filled out the application without referring to them, or either of them, and the same was thereafter signed by the insured. This offer was objected to, and the evidence was excluded, to which ruling an exception was duly taken, and this exception presents the only question to which our attention is directed.

The right of a life insurance company to exact, as a condition of issuing a policy to an applicant for insurance, that he shall furnish the examiner with certain information respecting his personal history and antecedents, and that he shall warrant the information thus furnished to be literally true, is one which is now fully recognized by the courts; and it is equally well settled as a principle of the law of insurance that information thus furnished, if false in fact, will defeat a recovery upon the contract of insurance, even though it is apparently immaterial to the risk. (*Clements* v. *Connecticut Indemnity Co.*, 29 App. Div. 131, and cases cited.)

In making this assertion we do not wish to be understood as declaring that the omission to report to a medical examiner every trifling bodily ailment will necessarily avoid a policy, for the law does not regard trifles. It is sometimes a difficult matter, however, to determine precisely what infirmities belong to this category. What would seem a matter of little or no importance to an ordinary layman, or even to an inexperienced physician, might, in the eyes of one of more skill or experience, point with unerring certainty to some serious but latent malady, and for this, as well as for some other reasons which have been referred to in the authorities upon the subject, it has been held that not only may an insurance company insist upon a rigid and truthful examination of every applicant for insurance, but that it may also require that the person making such examination shall be treated and regarded as the agent of the insured, and not of the insurer. This principle was very clearly enunciated in the case of *Bernard* v. *United Life Ins. Assn.* (14 App. Div. 142). It was subsequently recognized by this court in *Hamilton* v. *Fidelity Mutual Life Assn.* (27 App. Div.

480), and the decision in each of these cases was abundantly sup-
ported by authoritative precedent. (*Allen* v. *G. A. Ins. Co.*, 123
N. Y. 6; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519;
*Maier* v. *Fidelity Mut. Life Assn.*, 78 Fed. Rep. 566; *Kabok* v.
*Phœnix Mutual Life Ins. Co.*, 21 N. Y. St. Repr. 203.)

Indeed, so well settled do we regard the principle to which allu-
sion has just been made that there would be little or no occasion
for stating any reason for the conclusion we have reached in this
case, were it not for certain peculiar and distinctive features which
it is said to possess.

In a recent adjudication by the Appellate Division of the second
department (*O'Farrell* v. *Metropolitan Life Ins. Co.*, 22 App. Div
495), involving the determination of a similar question to the one now
under review, some expressions were indulged in which apparently
warrant the counsel for the appellant in claiming that the decision
of that case is not in harmony with the *Bernard* and *Hamilton*
cases.    But the learned justice who wrote the opinion in the *O'Far-
rell* case, while declining to commit himself to the doctrine of the
*Bernard* case, was careful to specify wherein he thought the latter
case differed from the one in which he was writing, and to give that
as a reason for not regarding it as controlling.    The distinction thus
made was that, in the *Bernard* case, the language of the contract
was " that the person soliciting or taking this application, and also
the medical examiner, shall be the agents of the applicant as to all
statements and answers in this application; " whereas in the *O'Farrell*
case it was simply declared that the application "has been made,
prepared and written by the applicant, or by his own proper agent; "
and it was asserted that the language last quoted excluded the idea
of an employment of the company's agent.

We fully recognize the propriety of construing the language of a
contract of insurance strictly against the insurer, for the reason that
all the papers relating thereto are generally formulated by able and
skilled counsel, with great care and deliberation. (*Darrow* v.
*Family Fund Society*, 116 N. Y. 537; *Mead* v. *American Fire
Ins. Co.*, 13 App. Div. 476.)

Indeed, so adroitly are they sometimes worded that they furnish
but an infinitesimal degree of protection to the insured; and it is
quite likely that the facts of the *O'Farrell* case warranted a very

rigid enforcement of this rule of construction.  However that may be, we find it impossible to invoke such a rule in the present case to the plaintiff's advantage, for we are unable to discover any essential difference between the language of the contract in the *Bernard* case and that of the one we are now considering, although it is contended by the learned counsel for the appellant that in the case at bar there is no express provision that any agent of the company shall become the agent of the insured.

This contention does not, however, appear to us to be well founded; for by the contract entered into between the insurer and insured it was "declared, agreed and warranted by the undersigned (the insured and assured) that the answers and statements contained in the foregoing application *and those made to the medical examiner*, as recorded in Parts A and B of this sheet, together with this declaration, shall be the basis and become part of the contract of insurance;  *  *  *  that they are full and true, and are correctly recorded, and that no information or statement not contained in this application, and in the statements made to the medical examiner (A and B respectively), received or acquired at any time by any person, shall be binding upon the company, or shall modify or alter the declaration and warranties made therein; that the persons who wrote in the answers and statements were and are our agents for the purpose and not the agents of the company;  *  *  * "

It is conceded that the person to whom the answers and statements were made, and who wrote them in the application, was the medical examiner of the defendant; and this being so, it is made plain that the language of the present contract is to all intents and purposes identical with that of the contract in the case of *Bernard ;* and, consequently, no opportunity is afforded for disregarding the force of that decision, even were we disposed to do so.

We think the case was properly disposed of at the Trial Term, and that the judgment appealed from should be affirmed.

All concurred except SPRING, J., who dissented in an opinion; LAUGHLIN, J., not sitting.

SPRING, J. (dissenting) :

The medical examiner was selected and paid by the defendant. He was, in fact, its representative.  The acts he did were for the

defendant, and they stamp his relation to it regardless of what the policy and its precedent application may state. The attempt to evade responsibility for his acts on the assumption he was the agent of the insured finds no warrant in what he did or the position he occupied. It is against public policy to hold that a physician who is the salaried appointee of an insurance company is not its agent, but is acting for every applicant for insurance in such company. He occupies his position by its grace. It created him as examiner, and directs the seeker for insurance to appear before him. The candidate cannot choose his own physician. The rule is invariable that the examiner named and paid for by the company must first pass upon the fitness of the applicant to be received by the company, and it is a matter of common knowledge that the decision of this official is potential with his principal.

The applicant for insurance, whether illiterate or educated, is prone to rely upon the advice of the medical examiner. What are trivial or serious ailments, and the importance of any consultation with a physician, are determined by this official. He possesses superior knowledge, and can better appreciate what is required than the layman submitting to the examination. If the examiner says that a scratch on the hand is not a personal injury within the meaning of the question on that subject, or that a slight cold, which has been visited upon every one in this climate, is not the cold contemplated by the inquiry, the suitor for insurance will yield to the suggestion of the experienced physician without question.

It is known in the locality where the physician resides that he acts for the company on every application. The position is one of trust. He has been chosen for his medical skill, for his standing in the community, to represent not each man who appears for examination, but for his employer. He cannot be the agent of both parties to the contract of insurance. Their interests may clash. If he represents the candidate his duty is inconsistent with his relation to the company to whom he looks for his compensation.

Appointed and paid by the company, and every act as its representative, it is a cheat to strip him of authority when the day of payment arrives and endow him with a relation to the insured in the teeth of his open agency for his paymaster.

The defendant hopes to escape liability because it is contended

that a fair construction of the contract makes the examiner the agent of the insured. It does not by specific declaration, and in that respect it may be distinguished from *Bernard* v. *United Life Ins. Assn.* (14 App. Div. 142). Beyond that, the position of the examiner is different from that of the ordinary soliciting agent. The professional skill of the physician carried with it a weight of authority peculiar to itself.

I am averse to maintaining the doctrine that when the company has carefully chosen its medical examiner it can refuse to pay to the widow or children of the insured the money he believed he had provided for them when the bread winner was gone, on the pretext that the physician hired was in the employ of the one insured instead of the company for which he acted. The trend of authority, as I understand it, is not in harmony with the prevailing opinion in this case. (See *O'Farrell* v. *Metropolitan Life Ins. Co.*, 22 App. Div. 495; *Pudritzky* v. *Knights of Honor*, 76 Mich. 428; *Flynn* v. *Eq. Life Ins. Co.*, 78 N. Y. 568; *Grattan* v. *Metropolitan Life Ins. Co.*, 80 id. 281; *Royal Neighbors of America* v. *Boman*, 177 Ill. 27; Beach Ins. § 415.)

The *O'Farrell* case construes a contract closely akin to the present one, and the reasoning of the court is decisively against holding that the medical examiner is the agent of the insured.

The plaintiff offered to show that the ailments omitted were slight and were so regarded by the medical examiner. If they were such in fact they were not within the intended scope of the questions. (*Breese* v. *Metropolitan Life Ins. Co.*, 37 App. Div. 152, 159; *Tooker* v. *Security Trust Co.*, 26 id. 372.)

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Judgment affirmed, with costs.